————————o————————

No. 3199.

(Court of Appeal, Parish of Orleans).

TEUTONIA LOAN AND BUILDING COMPANY vs. NELSON BUSH, Et al.

When a building contract stipulates for delay, the owner may assert his claim for demurrage against any sum that may be due by him to the builder under the contract, and his right to be paid out of any balance due the builder primes that of the furnishers of materials.

Amended and affirmed.

Appeal from the Civil District Court, Division C.

Dart & Kernan, Plaintiff & Appellant.

J. M. Pierce, for Defendant.

H. M. Ansley, for Lewis & Co., Appellees.

MOORE, J.   The plaintiff corporation and Nelson Bush, one of the defendants, covenanted, on the 16th day of March, 1901, in writing whereby the latter was to build a house for the former on a lot of ground by it owned and situated in the city of New Orleans. The contract was entered into under the terms of Act 180 of 1894; the provisions whereof as to bond, registry, etc., were fully complied with. The contract stipulated, "inter alia," that the work was to be completed on or before May 1st, 1901, and that, if not so completed, Bush, the builder, was to pay a penalty for such failure at the rate of $2.00 per day for every day from the expiration of the time specified until the delivery of the building and appurtenances; the same, to quote from the contract, "to be deducted out of the last payment as liquidated damages."

Bush defaulted on his contract and the consequence was that the plaintiff was compelled to finish the building.   If the building had been completed by Bush, and by the 1st of May, 1901, as stipulated, there would then have been due him by the plaintiff a balance of $564

under the terms of the contract. As it was, the plaintiff completed the house at a cost of $320.95, leaving a balance in the hands of the plaintiff of $228.45. As is usual in such cases, those who had furnished the materials, etc., to the builder were left unpaid. They at once caused their several accounts to be inscribed in the mortgage records of the parish of Orleans, expecting thereby to have their claims secured by a lien on the building.

Among the number left as unpaid creditors of Bush, and who had recorded their claim, was H. F. Lewis & Co.; their claim amounted to $142.45.

They brought suit against the plaintiff company, basing their right to recover, (notwithstanding the protection which the Act of 1894 supra gives to the owner,) on the ground, as alleged in their petition, "that, after Bush defaulted on said building, 'Mr. Otto Walther, who was the expert and superintendent employed by said Teutonia Loan & Building Association, and who had full charge of the erection and completion of said building, advised petitioner that, if petitioner would make certain changes, and alterations and corrections in their work, no reduction would be made as far as their bill was concerned, because of the default of said Bush, and guaranteed petitioner in behalf of the Teutonia Building Association that said Association would pay petitioner's bill * * * * and that thereupon the alterations, corrections and changes were made."

Thereafter the plaintiff corporation, having in its hands the balance of $228.45 aforesaid, an amount insufficient to discharge in full the unpaid claims, provoked a concursus, and, depositing in the registry said sum, prayed that the various claimants be cited and that they have their apportionment according to their respective claims, out of said sum, reserving and claiming however that it should be first paid and recover by priority out of said fund the sum of $156.00 as demurrage under the contract, being $2.00 per day from and after May 1st, 1901, the day the building should have been completed, to June 17th, 1901, the day it was finally finished. H. F. Lewis & Company's suit was cumulated with the concursus proceeding, to stand as an opposition thereto.

The trial Judge denied the plaintiff the right of priority of payment out of the balance in its hands and subordinated it to the payment of the material men, and awarded judgment in favor of Lewis & Company for the full amount of their claim against the plaintiff company, less such sum as they may receive as their pro rata of the fund to be distributed.

From this Judgment the plaintiff appeals, the only parties contesting in this Court being the plaintiff and H. F. Lewis & Company.

In our opinion our learned and esteemed brother of the District Court erred in both propositions propounded by this controversy. So far as the right of the owner of the building to be entitled to priority in the payment of the demurrage due him is concerned, there ought to be no dispute, as jurisprudence has long settled this question affirmatively.

It was made the subject of review by us in H. S. Karstendick vs. George L'Hote Syndic et al, No. 2273 of our docket (decided Dec. 10th, 1900). In that case we affirmed the following propositions:

1. When a building contract stipulates for a penalty for delay, the owner may assert his claim for demurrage against any sum that may be due by him to the builder under the contract.

2. The owner's claim may also be asserted in bar of the demand of furnishers of materials who have contracted with the builder and who have recorded and served attested accounts.

3. Those who contract with the builder undertake under and not beyond the contract, and have neither a right of action against the owner who has paid him according to law and the terms of the contract, nor a privilege on the buildings.

To these views we adhere. As we hold that the owner may first deduct the demurrage we must now determine the amount due therefor.

Our appreciation of the evidence leads us to the conclusion that the plaintiff would be entitled to the entire amount of the demurrage claimed; but as its counsel stated from the bar of this Court, (and apparently with some arrangement with opposite counsel as to what amount should be allowed in the event that this particular question should be decided in the appellant's favor) that he would waive all claims for demurrage beyond thirty-three days, and amounting to $66 we will decree accordingly.

On the second branch of the case and which affects the judgment of Lewis & Co., it appears that the changes and alterations which were made in the work done by that firm, were those which were absolutely necessary under the plans and specifications, without the doing of which they would have had no standing in Court, perhaps, even to claim their pro rata.

All the material which was to be furnished by them had been delivered and the changes made consisted of replacing the blinds and some slats so as to comply with the plans and specifications. Besides this the sole and only evidence administered as going to establish, as it contended, a distinct obligation on the part of plaintiff to pay Lewis & Company's claim in full is the testimony of the head of that firm, J. F. Lewis. Upon receipt of the following letter from the president of the plaintiff company, as follows :

New Orleans June 20th, 1901.

Messrs H. F. Lewis & Co., Ltd.,

216 Baronne street, City.

Gentlemen:—On or before to-morrow, 12 o'clock, kindly call at the office of our superintendent, Mr. O. Walther, corner Baronne and St. Joseph streets, in regard to your bill, on account of the Salcedo street cottage, with Nelson Bush, builder.

Yours truly,

CHARLES H. SCHENCK, President.

("Dictated").

he called upon Mr. Walther, the superintendent of the building, and then recites the following conversation with Walther.

Q. "Now, Mr. Lewis, do you remember when the altercation took place between Nelson Bush, the original contractor, and the Teutonia Loan & Building Co., and, if so, what work had you done on that Barker building, and had it been completed ? State fully the whole matter."

A. "As far as I am concerned, when we found that the building was lagging behind and not going ahead, why, we filed a lien on the property and served a copy on the Teutonia Loan & Building Association. Sometime after that we received a letter from the Building Association, requesting that we call upon Mr. Walther and discuss the matter about the factory work. Mr. Walther told me personally that it would be necessary for us to replace the front blinds and replace some of the slats in the other blinds, which had been damaged, in order for us to get our money out of the job, and, if we would do that, why, we would get our money in full, or words to that effect. With this understanding, I instructed our sash and door foreman to go out to the building and find out what the contractor required and make the necessary changes at once, which was done, to the entire satisfaction of the carpenters, as far as I understand."

It is on this vague, general, indefinite and unsatisfactory evidence of a promise to pay a debt for which the plaintiff corporation could not otherwise be legally held to pay, that it is claimed the plaintiff company should be held liable. Here was a debt for which as we have said, the plaintiff could not be made personally responsible; nor was its property legally affected by the registry of the claim, for no lien, under the law, executed therein as the very purpose of the Act of 1894 is to free the building of all liens when a bond is obtained and recorded, as was the case here.

It is, therefore, highly improbable that the plaintiff, under these

33

facts should have bound itself unconditionally to pay the claim, and nothing but positive evidence of the obligation so to do can hold them to pay it. Lewis & Co. are the plaintiffs in their own suit and must also be regarded as plaintiffs in the concursus.

The onus was upon them to make out their case with reasonable certainty. They have failed so to do and cannot recover.

It is, therefore, ordered adjudged and decreed that the judgment appealed from be amended, first, by allowing the appellant, plaintiff herein, to first deduct from the funds in his hands, and now deposited with the registry of the Court, the sum of sixty-six dollars due for demurrage; and, second, by striking out of said judgment so much thereof as awards personal judgment against the plaintiff for the sum of $142.45, and, as thus amended, the judgment is affirmed. The costs of the lower court to be paid out of the fund, and the costs of appeal by the appellee, H. F. Lewis & Co.

November 9th, 1903.

Rehearing refused December 7, 1903.